UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-1460

SHAWN MASSEY,

                                                    Plaintiff – Appellant,
            v.

CHARLOTTE-MECKLENBURG POLICE OFFICER
J.J. OJANIIT; CHARLOTTE-MECKLENBURG
POLICE OFFICER GERALD ESPOSITO;
CHARLOTTE-MECKLENBURG POLICE OFFICER          Defendants – Appellees.
TOM G. LEDFORD; CHARLOTTE-MECKLENBURG
POLICE OFFICERS JOHN AND JANE DOES ##1-
10, in their Individual Capacities

APPEAL FROM THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA

═══════════════════════════════

**JOINT BRIEF OF THE DEFENDANTS-APPELLEES**

═══════════════════════════════

James P. Cooney III(L)
Womble Carlyle Sandridge & Rice, LLP
One Wells Fargo Center, Suite 3500
301 South College Street
Charlotte, North Carolina 28202-6037
Telephone: 704-331-4980
jcooney@wcsr.com
Attorney for Officer Gerald Esposito

Lori R. Keeton
Parker Poe Adams & Bernstein
Three Wells Fargo Center
401 South Tryon Street, Suite 3000
Charlotte, North Carolina 28202
lorikeeton@parkerpoe.com
Attorney for Officer J.J. Ojaniit

Daniel E. Peterson
Assistant City Attorney
Office of the City Attorney
600 E. Fourth Street
Charlotte, North Carolina 28202-2841
dpeterson@charlottenc.gov
Attorney for Officer Tom Ledford

- i -

## **TABLE OF CONTENTS**

TABLE OF CONTENTS...............................................i

TABLE OF CASES AND AUTHORITIES................................ii

STATEMENT OF ISSUES............................................1

STATEMENT OF FACTS............................................ 2

SUMMARY OF ARGUMENT..........................................29

ARGUMENT....................................................30

    I.   THIS COURT HAS NO JURISDICTION TO CONSIDER THE PLAINTIFF'S APPEAL AS TO OFFICER LEDFORD AS A CONSEQUENCE OF THE PLAINTIFF'S FAILURE TO OBJECT TO THE RECOMMENDATION OF THE MAGISTRATE-JUDGE. ............36

    II.  THE UNCONTRADICTED PORTIONS OF THE PLEADINGS AND EXHIBITS ESTABLISH THAT PROBABLE CAUSE EXISTED INDEPENDENT OF THE EVIDENCE THAT THE PLAINTIFF CLAIMS IS TAINTED (COUNTS II, III AND V). .....................38

    III. THE ALLEGED FABRICATION WAS NOT THE CAUSE OF MASSEY'S CONVICTION (COUNT I). ..................................49

    IV. THE PLAINTIFF'S CLAIMS FOR CONSPIRACY MUST BE DISMISSED (COUNTS III, IV, and V). .....................55

    V.  NORTH CAROLINA DOES NOT RECOGNIZE A CIVIL CAUSE OF ACTION AGAINST A LAW ENFORCEMENT OFFICIAL FOR OBSTRUCTION OF JUSTICE (Count IV). .....................57

CONCLUSION..................................................58

## TABLE OF CASES AND AUTHORITIES

### Cases

*Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999) ....... 44

*Allen v. McCurry*, 449 U.S. 90, 102, 101 S.Ct. 411 (1980) ................................................. 45

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570, 127 S.Ct. 1955, 1974 (2007) ................................. 30

*Best v. Duke University*, 337 N.C. 742, 749, 448 S.E.2d 506, 510 (1994) ........................................ 40

*Blankenship v. Manchin*, 471 F.3d 523, 529 (4th Cir. 2006) ................................................. 35

*Brooks v. City of Winston-Salem*, 85 F.3d 178, 183 (4th Cir. 1996) ............................................. 39

*Brown v. Gilmore*, 278 F.3d 362, 367 (4th Cir. 2002) ........ 32

*Buckley v. Fitzsimmons*, 20 F.3d 789, 795 (7th Cir. 1994) .... 50

*Clatterbuck v. City of Charlottesville,* 708 F.3d 549 (4th Cir. 2013) ...................................... 34

*Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) ................................................. 30

*Evans v. Chalmers,* 703 F.3d 636, 650 (4th Cir. 2013) ........ 2

*Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) .... 31

*Franks v. Delaware*, 438 U.S. 154, 155-56, 98 S.Ct. 2674 (1978) ................................................. 39

*GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997) .......................... 35

*Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008) .... 30

*Gray v. Farley*, 13 F.3d 142, 146-47 (4th Cir. 1993) ........ 45

*Hovatter v. Widdowson*, 2006 WL 890713 (D. Md. 2006)........ 51

*Illinois v. Gates,* 462 U.S. 213, 235 (1983)................. 41

*Johnson v. De Grandy*, 512 U.S. 997, 1005–06, 114 S. Ct. 2647 (1994) ............................................... 45

*Katyle v. Penn National Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011 ) ............................................ 34

*Krause v. Bennett*, 887 F.2d 362, 371 (2d Cir. 1989) ........ 47

*Lambert v. Williams*, 223 F.3d 257, 262 (4th Cir. 2000) ...... 38

*Miller v. Prince George's County*, 475 F.3d 621, 628 (4th Cir. 2007) ............................................... 39

*Ornelas v. United States,* 517 U.S. 690, 695, 116 S.Ct. 1657, (1996) ............................................. 41

*Ricciuti v. New York Transit Authority,* 124 F.3d 123, 130 (2nd Cir. 1996) ........................................ 51

*Richardson v. The City of New York*, 2006 WL 2792768 fn.4 (E.D.N.Y. 2006) ...................................... 33

*Ruttenberg v. Jones*, 283 F.App'x 121, 132 (4th Cir. 2008) ............................................... 56

*S.P. v. City of Takoma Park, Md.,* 134 F.3d 260, 274 (4th Cir. 1998) ............................................ 39

*Spiegel v. Cortese*, 196 F.3d 717, 724 (7th Cir. 1999) ....... 43

*State v. Crawford,* 125 N.C. App. 279, 282, 480 S.E.2d 422, 424 (1997) ........................................... 41

*State v. Wright*, 206 N.C. App., 696 S.E.2d 832 (2010) ....... 57

*Strickland v. Hedrick*, 194 N.C. App. 1, 22, 669 S.E.2d 61, 74 (2008) ............................................ 48

*Tellabs, Inc. v. Makor Issues & Rights*, 551 U.S. 308, 322, 127 S.Ct. 2499 (2007) ............................... 34

*Torchinsky v. Siwinski*, 942 F.2d 257, 262 (4th Cir. 1991) ............................................... 43

*U.S. v. Branch*, 537 F.3d 328, 342 (4th Cir. 2008) .......... 54

*U.S. v. Humphries*, 372 F.3d 653, 660 (4th Cir. 2004) ....... 41

*U.S. v. Midgette*, 478 F.3d 616, 621 (4th Cir. 2007) ........ 37

- iv -

*U.S. v. Schronce,* 727 F.2d 91, 93–94 (4th Cir. 1984) ........ 37

*Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002). .......... 30

*Wadkins v. Arnold*, 214 F.3d 535, 541 (4th Cir. 2000) ....... 47

*Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 364–65 (4th Cir. 2012) ........................................... 30

*Washington v. Wilmore*, 407 F.3d 274, 279 (4th Cir. 2005) .... 45

*Wells v. Shriners Hospital,* 109 F.3d 198, 201 (4th Cir. 1997) .................................................... 37

*Wilkes v. Young,* 28 F.3d 1362, 1365 (4th Cir. 1994) ........ 40

*Wilson v. Russo,* 212 F.3d 781, 789 (3rd Cir. 2000) ......... 39

*Winfield v. Bass*, 106 F.3d 525, 530 n.2 (4th Cir. 1997) ..... 49

*Zahrey v. Coffey*, 221 F.3d 342, 349–50 & n.5 (2nd Cir. 2000) .................................................... 33

**Statutes**

28 U.S.C. §1291.............................................. 38

28 U.S.C. §1983.............................................. 24

28 U.S.C. §636(b)(1).......................................... 1

**Rules**

Fed.R.Civ.P. Rule 10(c)...................................... 26

Fed.R.Civ.P. Rule 12(c)...................................... 25

Fed.R.Civ.P. Rule 12(d)...................................... 26

Fed.R.Civ.P. Rule 72(b)(2)................................... 1

- 1 -

## STATEMENT OF ISSUES

The Defendant-Appellees respectfully submit that the following issues are before this Court in this appeal:

1. Does the Court have jurisdiction to consider the claims against Officer Ledford when the Magistrate-Judge recommended dismissal of the claims against him and the Plaintiff failed to object under 28 U.S.C. §636(b)(1) and Fed.R.Civ.P. Rule 72(b)(2)?

2. In the face of what the Plaintiff concedes was the victim's "positive" identification of him as her assailant at trial,(JA 13, ¶25), and in connection with uncontradicted evidence that places the Plaintiff in the area of the crime at the time of the crime – – making his alibi factually impossible – – did the District Court err in dismissing the Plaintiff's Fourth Amendment claim for unreasonable seizure and his state law claim for malicious prosecution on the ground that the uncontradicted portions of the pleadings and exhibits established the existence of probable cause independent of any allegedly "tainted" evidence?

3. Where the Plaintiff is placed in the area of the crime at about the time of the crime by an eyewitness – – making his alibi defense impossible – – and where the victim unequivocally identifies the Plaintiff by his appearance and his voice as the man who assaulted her, did the District Court err in ruling that

- 2 -

allegedly fabricated evidence introduced solely for purposes of corroboration was not the legal cause of the Plaintiff's conviction?

4. Did the District Court err in dismissing the Plaintiff's claims for conspiracy where the Complaint set forth nothing more than bare conclusory allegations of a conspiracy and the alleged object of the conspiracy – – the prosecution of the Plaintiff without probable cause – – did not exist?

*5.* Did the District Court err in following this Court's decision in *Evans v. Chalmers,* 703 F.3d 636, 650 (4th Cir. 2013) by dismissing the Plaintiff's claims for obstruction of justice under North Carolina law when no such claim exists under North Carolina law?

**STATEMENT OF FACTS**

This case arises out of the trial and conviction of the Plaintiff, Shawn Massey ("Massey"), in September 1999 for kidnapping and other crimes, and the decision of the Office of District Attorney for Mecklenburg County in May 2010 to vacate his convictions and dismiss those charges. While the Plaintiff claims throughout his Brief that he was exonerated because he was innocent, the District Attorney's Motion – – and the uncontradicted portions of the pleadings and their exhibits (including the transcript of his trial) – – reveals that "there is substantial evidence placing the defendant in the area [of

- 3 -

the crime] and identifying him as the perpetrator." (JA 65). Shawn Massey was freed because of concerns over the failure of the District Attorney to produce potentially exculpatory or impeaching evidence; that evidence served only to create potential reasonable doubt, doubt which led the District Attorney to conclude that "it cannot be said with certainty that the jury would have reached the same conclusion, nor can it be assured that the jury would have rendered the same verdict." (JA 66). The "substantial evidence" that existed and continues to remain against Massey is revealed in the uncontradicted portions of the pleadings and their exhibits and formed the basis of the District Court's decision to dismiss Massey's Complaint.

### *The Robbery and Kidnapping of Samantha Wood*

The events of this case arise out of the robbery and kidnapping of Samantha Wood and her children on May 22, 1998. At that time, Mrs. Wood, her husband and her children (one of whom was an infant), lived at 5206 Cherry Crest Lane in Apartment B of the Emerald Bay Apartments. At about 10:00 am, Mrs. Wood was returning from errands with her children; as she approached her door a man grabbed her and put a gun to her baby's head. (JA 11, ¶11; JA 134-135). Forcing her inside the apartment, the assailant attempted to rape her and, when unsuccessful, robbed her, eventually fleeing after 30 minutes. (JA 11, ¶¶13-14; JA 145). The assailant did not wear a mask.

- 4 -

(JA 146). While in the apartment, the assailant told Mrs. Wood to be quiet because the walls of the Emerald Bay Apartments were not soundproof (JA 141); he also told her that he knew her schedule and her husband's schedule and warned her not to call police as "he would be outside watching" and would come back and kill her. (JA 144-145; JA 72).

After being released, Mrs. Wood called the police. She described her attacker as a young black male who was approximately 5'9" tall and was wearing a red jersey with a "Hurricanes" symbol and blue jean shorts. (JA 12, ¶15-16; JA 72; JA 137). She also told police that her attacker had "(4) small braids on the back of his head." (JA 12, ¶16; JA 73). Mrs. Wood described her attacker as weighing approximately 180 pounds. (JA 73).

### The Police Investigation

The next day, May 23, 1998, Officer Gerald Esposito was assigned to the Emerald Bay Apartments to conduct "canvas" interviews. (JA 199; JA 12, ¶17). Officer Esposito was a violent crimes investigator with Adam One and had been an officer with the Charlotte-Mecklenburg Police Department for six years; for nearly 18 years before that he had been in law enforcement in the Chicago area. (JA 198). During the canvas process, Officer Esposito spoke with Theresa Savall, the Assistant Community Director for the Emerald Bay Apartments. (JA 12, ¶17; JA 163).

- 5 -

Ms. Savall had been at work on May 22, 1998, and was doing her "rounds" of the buildings at approximately 10:00 am when she was accosted by a young black male, approximately 5'11" tall, wearing a jersey type shirt and a hat.[1]  Ms. Savall indicated that the man was "acting kind of hyper," approached her, said "Baby, you look good," and asked her to "go out" with him.  (JA 12, ¶17; JA 166-167).  Ms. Savall told the man to leave her alone and he left, walking  towards the apartment buildings to the right.  (JA 167).  Ms. Savall told Officer Esposito that the man had come from the patio of the apartment at 5038 Cherry Crest Lane, Apartment C.  (JA 12, ¶17; JA 169).

Based upon this information, Officer Esposito went to 5038 Cherry Crest Lane, Apartment C, and spoke with the woman who lived at that apartment, April Pride.  (JA 12, ¶18).  In order not to jeopardize any potential leads, Officer Esposito told Ms. Pride that he was investigating a noise complaint about a young black male the prior morning.  (JA 203-204).  ("I wanted her not to be reluctant in identifying who was on her premises.  I wanted her to be truthful.  And so, I didn't want to say that we were investigating any sort of attempt[ed] rape or robbery or anything that would alarm her so that she wouldn't protect anyone.").  While the Plaintiff makes much of this investigative

---

[1]  Ms. Savall recalled that the jersey colors were orange and white, the colors of the University of Miami Hurricanes.

decision by Officer Esposito, this decision did not violate any of Massey's rights; more critically, Officer Esposito specifically informed the Jury at Massey's trial of his decision and thus it could not possibly have been the cause of or contributed to Massey's conviction.

Ms. Pride told Officer Esposito that Shawn Massey had spent the night at her apartment; she described Shawn Massey as about 25 years old and told Officer Esposito that he lived with his grandmother at either 3212 or 3216 Graymont Road. (JA 12, ¶18; JA 75). Officer Esposito further wrote in his report that Ms. Pride said that "Mr. MASSEY wears his hair pulled back with 4 or 5 braids." (JA 75).[2] Ms. Pride also confirmed that Mr. Massey was at her apartment on the morning of May 22, 1998, when she left for work at 6:45am. (JA 187, 273; JA 12, ¶18).

With this information, Officer Esposito conducted a record search into Mr. Massey and discovered that he had previously been arrested and that a processing photograph ("mug shot") existed for him. Officer Esposito provided this information to Officer J.J. Ojaniit. Officer Esposito had no further involvement in the investigation.

---

[2] While Mr. Massey insists in his brief that Officer Esposito wrote an "almost verbatim description" of Mrs. Wood's statement, Brief at 9, in fact Mrs. Wood stated that the suspect had "(4) small braids on the back of his head." (JA 73).

- 7 -

## *Massey is Identified by Samantha Wood and Teresa Savall*

Officer Ojaniit took Officer Esposito's information and submitted it to the Robbery Division; that Division created a photo array that included Massey's mug shot. (JA 76; JA 303). The photo array itself is computer generated; once a potential suspect's photograph is found and placed into the computer, the computer then locates other photographs of individuals with similar physical characteristics – – the array is then printed out with a number of similar photographs. (JA 212-213). The array consisted of facial photographs of six black males; the photographs did not depict or show the backs of their heads. (JA 76).

Massey claims in his Brief that, because of the "fabricated" description by Officer Esposito, Massey's photograph was placed into a photographic array. Brief at 10. This claim makes no sense in the context of Massey's claim of fabrication. Officer Esposito was the one who located Massey's photograph and supplied to Officer Ojaniit so that it could be placed into an array – – since Massey claims that Officer Esposito knew that April Pride had not said that Massey wore braids (and instead fabricated that in his report), then it is clear that he could not have relied on that fabrication in selecting Massey's photograph. Massey's photograph was placed into an array because Ms. Pride told Officer Esposito that

- 8 -

Massey spent the night before the crime with her in her apartment, that Massey was there when she left in the morning, and because Ms. Savall had been accosted by a black male at about the time of the crime who had come from Ms. Pride's apartment.

That same day, Mrs. Wood came to the police station to view seven or eight different photo arrays, including the array with Massey's picture. (JA 156–57, 162). Before presenting the arrays to her, Officer Ojaniit advised her "that I was going to show her a series of photos; and that the suspect may or may not be in that photo. If she would just take her time and look at and advise me." (JA 231). When shown the array containing Shawn Massey's picture, Mrs. Wood selected Massey, telling Officer Ojaniit that his picture "looks most like the suspect except the suspect had longer hair with braids and he did not have a beard."[3] Massey was the only person identified by Mrs. Wood in these photo arrays.[4] Officer Ojaniit circled Massey's picture and wrote down what Mrs. Wood told him on the array. (JA 76). Officer Ojaniit then did a separate typewritten report in which he stated that Mrs. Wood "told the officer that one of the

---

[3] The mug shot showed Mr. Massey with a light beard, which he did not have in May 1998.

[4] Since each array contained six photographs (JA 76), Mrs. Wood was asked to view between 42 and 48 photographs; Massey's was the only one selected by her.

subjects looked like the suspect except that the suspect had longer hair with braids and he did not have a beard." (JA 77).[5] Officer Ojaniit had no further contact with Mrs. Wood after this date.

The Plaintiff claims that Mrs. Wood "must have assumed that Officer Ojaniit put Mr. Massey's photograph in the photographic lineup because he believed Mr. Massey wore his hair in the distinctive cornrow style that she told the Officer the assailant wore." Brief at 6. There is no allegation (nor inference from any allegation) in the Complaint that claims this; moreover, there is no evidence that this assumption is correct. To the contrary, since Mrs. Wood felt compelled to tell Officer Ojaniit that Massey's photograph "looks most like the suspect except the suspect had longer hair with braids and he did not have a beard," it is evident that Mrs. Wood did not assume that Massey (or anyone else in the seven or eight arrays

---

[5] The absence of the word "most" forms the basis of the constitutional claim against Officer Ojaniit.

that she was shown) had braids, otherwise she would not have made this statement.[6]

There is no allegation or inference that Mrs. Wood was informed in any way about April Pride's statement that Massey wore four or five braids before her identification of Massey.

On May 26, 1998, another copy of the photo array was shown by Officer Ledford and Officer Esposito to Ms. Savall. Ms. Savall was told that the person who accosted her on the morning of May 22 "may or may not be" in the array and that she "should not feel pressured to identify anyone." (JA 179). Ms. Savall focused on Massey's photograph "fairly quickly; very quickly," (JA 216) and identified him as the man who approached her that morning. (JA 13, ¶22; JA 170-171).

### The Prosecution of Shawn Massey

On July 7, 1998, felony warrants for Shawn Massey's arrest on three counts of kidnapping, one count of armed robbery, and one count of breaking and entering with a dangerous weapon were issued to Officer Ledford. (JA 78-85). Before requesting permission to take out these warrants from the District

---

[6] Massey insists in his Brief that Mrs. Wood testified at trial that he did not wear braids, but wore "cornrows," and, indeed, that these were "distinctive" cornrows that were the "equivalent" of "non-biological DNA." Brief at 7. This is not correct - - Mrs. Wood never testified that Massey wore "cornrows" or used that term; she testified only that Massey's "braids" were not hanging down "that much; just on the very back where it wasn't pulled together," (JA 156), and that the braids ran through his hair to the back. (JA 136, 137).

- 11 -

Attorney, Officer Ledford called Mrs. Wood to "have a feel for what she had told the officer who did show the line-up." (JA 217). Mrs. Wood told Officer Ledford that "[s]he told me that she believed the person she identified was the person who robbed her. That she would be certain if she saw him in person." (JA 217).

The warrants were not served until August 26, 1998, when Shawn Massey was arrested on other charges. Shawn Massey was indicted by a grand jury for these felonies on September 8, 1998. (JA 86-90). Neither Officer Ojaniit nor Officer Esposito appeared before the grand jury, nor were they listed as witnesses for the grand jury hearing. (JA 82) While Officer Ledford was listed as a grand jury witness, only Officers Franklin and Pless testified; neither has been named as a defendant in this case. (JA 86-90).

Massey was appointed counsel and counsel was provided with discovery, including the written reports by Officers Ojaniit and Esposito and the photo array used to identify Massey with Mrs. Wood's statements written on it. Trial was scheduled to begin on September 13, 1999.

Before court opened that morning, Mrs. Wood spoke with the Assistant District Attorney, telling him that she was uncertain about her identification because Massey's appearance had changed while he was in jail, stating: "I don't know if that's him or

- 12 -

not." (JA 70, ¶6)[7]  Because a hearing was about to begin, the Assistant District Attorney told her that he would not be able to discuss this with her at that time. (JA 70, ¶6). Mrs. Wood then watched as a preliminary hearing was conducted over whether Massey's attorney should be allowed to withdraw.[8] (JA 99-104). During the course of that hearing, Mr. Massey answered questions about his satisfaction with and confidence in his attorney. Following that hearing, Mrs. Wood informed the Assistant District Attorney that "she was satisfied Massey was the one who victimized her based on seeing his face and hearing his voice." (JA 70, ¶6). The State did not reveal these conversations to Massey's counsel.

Shawn Massey's trial began on September 14, 1999. His attorney filed a Motion to Suppress Mrs. Wood's out-of-court identification of him, and to bar her from identifying him in court. The trial court held a hearing on the Motion, and took testimony from a number of witnesses, all but one of whom was

---

[7] Mrs. Wood testified that Massey's hair was shorter at the time of trial than the day that he attacked her and that he had appeared to have gained weight over the intervening 16 months. (JA 152).

[8] The hearing concerned a request by Massey's counsel to withdraw because Massey had "expressed concerns about [her] representation and . . . recently stated that he [was] planning on preparing litigation in the event things do not go well." (JA 99).

called by defense counsel.[9]  The thrust of the testimony offered
by defense counsel was that  Massey never wore braids in his
hair, that his hair was never long enough to wear braids, and
that he was at work at the time the crime occurred on May 22,
1998.   Consequently, counsel argued that the out-of-court
identification conducted by Officer Ojaniit had been
constitutionally defective and that any in-court identification
of  Massey by Mrs. Wood would be inherently unreliable.   The
trial court denied the Motion and entered extensive findings of
fact and conclusions of law permitting the State to introduce
Mrs. Wood's out-of-court identification and allowing her to
identify Massey in-court during her testimony.  (JA 271-282).
Officer Ojaniit testified at the Suppression hearing and was
examined about the photo array and his written statement, (JA
229, 231); he testified explicitly about his notation on the
photo array that Mrs. Wood said Massey "looks most like" the
person who kidnapped and attempted to rape her. (JA 234).
Neither Officer Esposito nor Officer Ledford testified at the
Suppression hearing.

    The State's case against Shawn Massey was based on his
identification by Mrs. Wood as being her attacker, and his
identification by Theresa Savall as being the man who accosted

---

[9] Due to the unavailability of witnesses, the Motion to Suppress
was heard in the middle of the State's case, with the consent of
both the State and the Defendant.

her, thus placing him within the apartment complex at the time of the attack. (JA 14, ¶24–25).

The Complaint concedes that, at trial, Mrs. Wood "positively identified Mr. Massey in court," testifying that she recognized him by both his appearance and from the sound of his voice. (JA 14, ¶25, JA 153). Mrs. Wood told the Jury that she was with her attacker for 30 minutes (JA 145) and that her attacker did not wear a mask (JA 146). In identifying Massey, Mrs. Wood told the Jury that she had "a picture [of her attacker] in the back of my mind, the whole time . . . . I see it every night." (JA 161–62). Mrs. Wood also testified that she was shown seven or eight different photo arrays – – Massey was the only person that she identified out of those arrays. (JA 156–57, 162). Mrs. Wood was cross-examined by Massey's counsel about her statement to Officer Ojaniit – – written on the photo array – – that "this looks most like him." (JA 154, 160–61). Massey argues in his Brief that Mrs. Wood testified that she did not "positively identify" him in the photo array. Brief at 10. In fact, she testified:

> Q. Okay. But, you still could not positively identify this man [in the array] as the person who attacked you. Is that correct?
>
> A. By the facial expression, it looked like the man that robbed us.
>
> Q. But, did the notation – – was this your statement, [Reading.]

"He looks most like him."

A.    Yes.

Q.    So, there was not a positive statement that this was the man.  Is that correct?

A.    No.

Q.    And, as a matter of fact, you did not sign your name anywhere on this line-up.  Is that correct?

A.    No.

Q.    Because you were not positive this is the man; were you?

A.    They didn't ask me to sign.

Q.    Did you say that you were sure this was the man?

A.    No.

(JA 155).

Teresa Savall testified about her encounter with a man at Mrs. Wood's apartment complex at "around 10:00 o'clock," the same general time that Mrs. Wood was attacked. (JA 163).  She indicated that the man came from the patio at April Pride's apartment and, after accosting her for three to four minutes, walked back towards the apartments to her right. (JA 169, 172, 168).  Ms. Savall identified that man as Shawn Massey in both a photo array and in-court.

There was no evidence that either Ms. Savall or Mrs. Wood were aware of or told about the allegedly fabricated statement

- 16 -

concerning Massey's hair.  Their identifications of Massey were made independently of April Pride's statement.

The State also called April Pride.  Ms. Pride testified that Shawn Massey was the person that both Mrs. Woods and Theresa Savall had chosen in the photographic array, and identified Shawn Massey herself.  (JA 184–185; JA 190).  She testified that he spent the night at her apartment and that he was still at her apartment in the complex at 6:45am on the morning of the attack, when she went to work.  (JA 186–187).  Ms. Pride and Shawn Massey had been friends for more than a decade, and Ms. Pride testified that he came by her apartment frequently.  (JA 14–15, ¶27; JA 185, 190).  Since, based on the attacker's statements to Mrs. Wood, the attacker was familiar with the apartment complex (including the fact that the walls were not soundproof) and was in the complex frequently enough to know that Mrs. Wood had a husband and what their schedules were, Ms. Pride's testimony not only placed Shawn Massey at the complex that morning but also established his knowledge of the apartments.  She was not asked any questions about Massey's hairstyle by the State.

During cross-examination, however, Ms. Pride testified that Shawn Massey never wore his hair long, that he did not have braids when he spent the night of May 21st at her apartment, and that she had never seen him with braids.  (JA 14–15, ¶27; JA

- 17 -

190–191). When shown the report made by Officer Esposito, Ms. Pride testified that she told Officer Esposito everything in his report except that she did "not recall telling him" that Shawn Massey had 4 to 5 braids in his hair:

> Q. [By the ADA] If the officer had written in his notes that Mr. Massey, that you told him Mr. Massey wears his hair pulled back with four or five braids, would the officer have been making that up?
>
> MS. THOMAS: OBJECTION.
>
> THE COURT: OVERRULED. I'll let her answer. You may answer the question.
>
> A. I recall the officer asking me if Shawn wore braids. I do not recall telling him that he did.
>
> Q. So, you have no idea why the officer would have written that down in notes of his conversation with you?
>
> A. That's right.
>
> Q. Okay. Now, do you also remember coming to my office, sometime probably about two weeks ago?
>
> A. Yes.
>
> Q. Okay. And do you remember me showing you pictures of the defendant and asking you if that was the Shawn Massey you knew?
>
> A. [No verbal response]
>
> Q. Do you remember that?
>
> A. I can't remember you showing me any pictures.
>
> Q. Okay, do you remember telling me that he had braids at that time?
>
> A. No.

- 18 -

    Q.  Okay.  So your testimony would be that you would have told me that he had a close haircut at that time, as well?

    A.  I don't remember telling you what his hair looked like.

(JA 194-195).

The State called Officer Esposito to introduce his notes of his conversation with Ms. Savall (and her identification of Shawn Massey) and Ms. Pride into evidence.  In so doing, the trial court specifically instructed the Jury that it was to consider the notes of Officer Esposito's conversation with Ms. Pride "for the purpose of corroborating the testimony of April Thompson [Pride], if indeed you find that it does corroborate her testimony.  Do not consider it for other purposes."  (JA 205-06).[10]  Officer Esposito's notes were thus never introduced as substantive evidence, and were limited solely to corroborating Ms. Pride.  The relevant notes occupy approximately one-third of one page of the transcript out of a total transcript of 338 pages.  Aside from reading this single paragraph in his notes (in which Ms. Pride disputed only a single sentence), Officer Esposito was asked only one question about this portion of his notes:  "Would you have written that

---

[10]  Ms. Pride had apparently separated from her husband after these events and before trial and changed her name to "Thompson."

last comment about how he wore his hair if she had not told you that?" His answer was: "No, sir." (JA 206).

The State also called Officer Ledford as well as the crime scene investigator. Officer Ledford testified concerning Ms. Savall's identification of Massey as the man who accosted her on the morning of the crime near Mrs. Wood's apartment. He further told the Jury about his conversation with Mrs. Wood prior to obtaining warrants where "[s]he told me that she believed the person she identified was the person who robbed her. That she would be certain if she saw him in person." The crime scene investigator testified there was no physical evidence linking anyone to the crime scene because he had been unable to lift any fingerprints from the crime scene. (JA 308-309). He further testified that in his experience it was not "abnormal" to respond to a crime scene and be unable to lift latent prints. Because there were no fingerprints, he collected no physical evidence from the crime scene.

Finally, the State also called Officer Ojaniit. He testified about the initial statement he took from Mrs. Wood about her attack as well as about her out-of-court identification of Massey from among a number of similar photographs. During the course of his testimony, Officer Ojaniit recounted Mrs. Wood's statements to him and was specifically questioned about the alleged discrepancy between

the comments written on Massey's photo array ("looks the most like") and the written report of her identification ("looks like"). Both were presented to the Jury. (JA 286-306).

Shawn Massey called six witnesses in his defense, including recalling April Pride. (JA 15, ¶29-30). One of those witnesses, Brady Dorsey, testified that on May 23, 1998, Shawn Massey was at work as a day laborer several miles away from the apartments. He testified that he picked Shawn Massey up at between 6:45am and 7:00am at his home on Graymont Road and drove him to the worksite, where he stayed the day and then was paid in cash.[11] (JA 317, 320). While the laborers are supposed to sign their cash vouchers, the cash voucher for Shawn Massey was not signed for May 23rd. (JA 315-316). Mr. Dorsey was not able to explain why, if Massey had been at work on May 23rd, his voucher was not signed. Massey's employer, and all his other witnesses, testified that he wore his hair short, that he did not wear braids, and that he never wore braids. (JA 15, ¶29). Shawn Massey's relatives brought in a number of pictures of him over the years, such as his prom picture with his girlfriend and baby, none of which showed him with braids. The case for the

---

[11] Graymont is more than 5 miles from the Emerald Bay Apartments on Cherry Crest Lane; Mr. Massey did not own an automobile at that time. (JA 328-329). It thus would have been impossible for Shawn Massey to have been in April Pride's apartment at 6:45am and then to have been picked up by his employer at between 6:45am and 7:00am, at his home, 5 miles away.

- 21 -

defense closed with April Pride who, once again, denied that she had ever said that Shawn Massey had braids in his hair and, again, placed him at the Emerald Bay Apartments at 6:45am on May 23rd, (JA 377), approximately the same time as his employer claimed that he was being picked up from his home on Graymont, some 5 miles away.

Shawn Massey did not testify in his own defense.

The Jury deliberated for approximately 2 hours and 35 minutes over the course of two days before finding Shawn Massey guilty on all counts. (JA 406-407). He was sentenced to between 103 and 113 months. (JA 15, ¶31).

Shawn Massey appealed his convictions, assigning two errors: (1) the failure to suppress his identification by Mrs. Wood, and (2) the sufficiency of the evidence. On February 21, 2001, the Court of Appeals, in an unpublished opinion authored by Judge James Wynn, found no error.[12] Specifically, it held that the identification by Mrs. Wood was reliable, was based on a photographic lineup that was "fair," and that there was no evidence that Mrs. Wood was induced to select Shawn Massey's photograph from the lineup. The Court further found that the evidence was sufficient to submit to the Jury. The Court did not mention either April Pride's testimony or Officer Esposito's

---

[12] A copy of the Court of Appeals decision in this matter is attached to this Brief as an Addendum.

- 22 -

notes or testimony in its opinion and there is no indication that, in finding the evidence sufficient to go to the Jury, the Court of Appeals in any way relied on either for its conclusion.

### *The Postconviction Proceedings that Released Shawn Massey*

The events that led to Shawn Massey's release on May 6, 2010, are set forth in a Motion filed by the District Attorney. (JA 62-66).  That Motion indicated that, after Massey's conviction was affirmed on appeal, the Duke Law School Wrongful Convictions Clinic concluded that he was innocent and raised two issues:  (1) "Massey's hair was not as described by the victim Wood," and (2) "Wood expressed doubt as to Massey being the one who committed the crimes to the Assistant District Attorney trying the case."  (JA 62, ¶25).  The Duke University Clinic presented to the District Attorney a number of additional pictures of Massey that were in the possession of the Sheriff's Department (apparently as mug shots) from 1991, 1995, 1996 and 1998 which showed Shawn Massey with "close cropped hair."  As is customary with such photographs, they did "not show side views or the back of the head."  (JA 64, ¶4).  These additional photographs may have been enlargements of photos contained in the District Attorney's files and it was not clear that they were produced to defense counsel for trial.  (JA 64-65, ¶5).  Additionally, the Assistant District Attorney indicated that he

did not disclose to defense counsel his conversation with Mrs. Wood before the preliminary hearing. (JA 65, ¶6).

The Motion indicated that, upon receiving this information, Shawn Massey agreed to and was given a polygraph examination. He tested deceptive on two issues: (1) his involvement in the crime and (2) his hair style at the time of the crime. (JA 64, ¶3 [fifth bullet point]). In addition, after receiving this additional information, Mrs. Wood was reinterviewed by investigators on March 16, 2010. She again identified Shawn Massey as the man who robbed her. (JA 63, ¶3 [first bullet point]).

It was the District Attorney's assessment that the potential failure to produce the other photographs of Shawn Massey, and the failure to disclose the Assistant District Attorney's conversation with Mrs. Wood, violated his Office's policies on discovery and that this additional evidence could create "reasonable doubt about whether [Shawn Massey] committed the offense." (JA 65, ¶6). The District Attorney nonetheless believed that there was still "substantial evidence placing [Shawn Massey] in the area and identifying him as the perpetrator." (JA 65, ¶6). However, in light of these two additional pieces of evidence, he concluded that sufficient reasonable doubt could exist on retrial such that "it cannot be said with certainty that the jury would have reached the same

- 24 -

conclusion, nor can it be assured that the jury would have rendered the same verdict." (JA 66). Thus, "out of an abundance of caution," he requested that the Superior Court set aside the jury verdicts so that he could then file a voluntary dismissal. (JA 66). The Motion was granted, a dismissal was filed, and Shawn Massey was released.

### *The Federal Civil Suit*

More than a year after his release, Massey filed this lawsuit. Suing Officers Ojaniit, Esposito and Ledford in their individual capacities, Massey made claims under 28 U.S.C. §1983 for a Due Process violation under the Fifth Amendment based on the alleged "fabrication" of the sentence in April Pride's interview concerning Massey's braids (Count I), for malicious prosecution and unreasonable seizure under the Fourth Amendment based upon the absence of probable cause (Count II), for conspiracy to commit the Due Process and unreasonable seizure torts (County III) and under North Carolina law for obstruction of justice (Count IV) and malicious prosecution and conspiracy to commit malicious prosecution (Count V).

Massey's specific allegations against each of the Officers varied. Massey's allegation against Officer Esposito alleged that Officer Esposito fabricated evidence by making up the statement in April Pride's interview concerning braids. (JA 12–13). The use of this alleged fabrication to impeach Ms. Pride

- 25 -

was claimed by Massey to be the cause of his conviction. Massey's Complaint against Officer Ojaniit alleged that the omission by Officer Ojaniit in his written report of a single word in Ms. Wood's identification of Massey – – that Massey "looked like" as opposed to "looked most like" the person who had attacked her (which was written on the photo array provided to Massey in discovery) – – made the written report false and misleading and led to Massey's wrongful arrest and indictment without probable cause. (JA 13, ¶21). As to Officer Ledford, the body of the Complaint made only a single allegation – – that he showed the photo array to Ms. Savall, who identified Massey. (JA 13, ¶22). Based upon these allegations, Massey claimed the Officers entered into and engaged in a conspiracy. While making numerous references to reports, the photo array, the proceedings at trial, and the events that led to the dismissal of his conviction, the Complaint attached none of these documents.

The Defendants each filed an Answer, denying the allegations of the Complaint and pleading qualified immunity, among other defenses. Each Defendant also attached the documents to which the Complaint had referred as exhibits to their Answers. Shortly after the Answers and exhibits were filed, the Defendants each moved for judgment on the pleadings under Fed.R.Civ.P. Rule 12(c). The bases for the Motions rested on the fact that the uncontradicted evidence that existed

against Massey at the time of his arrest and prosecution – – shorn of the statement which he claimed to be fabricated and with the addition of the three words to Officer Ojaniit's typewritten report – – established probable cause, because the statement alleged to be fabricated was not the cause of Massey's conviction, and because the Complaint otherwise failed to allege any other actions that violated Massey's constitutional or state law rights.

Two months after the Motions were filed, and before responding to the Motions, Massey filed an untimely Motion to Strike all of the exhibits, claiming that they were not "written instruments" within the meaning of Fed.R.Civ.P. Rule 10(c); alternatively, he sought under Fed.R.Civ.P. Rule 12(d) to convert the Motions to motions for summary judgment, hold them in abeyance, and permit discovery on the ground that the exhibits constituted matters outside the pleadings – – notwithstanding the fact that they were attached as exhibits to Answers (and were referred to by the allegations of his own Complaint). The Magistrate–Judge denied Massey's attempts to strip the transcript and source documents from the pleadings.

Massey then responded to the Motions. On August 17, 2012, the Magistrate–Judge recommended that Officer Ledford's Motion be granted as the Complaint failed "to state a plausible claim," (JA 462) and that Officer Ojaniit and Esposito's Motions be

- 27 -

denied on the ground that it was premature to address the issues of probable cause and causation and that discovery should take place before their resolution. (JA 447–64).

Massey did not file objections to the Magistrate-Judge's recommendations; Officers Ojaniit and Esposito did.  On March 29, 2013, the District Court rejected the Magistrate-Judge's recommendations as to Officers Ojaniit and Esposito's Motions and dismissed Massey's Complaint against all Defendants.  The District Court found, based upon the trial transcript, photo array, written reports, proceedings and the uncontradicted portions of the pleadings – – and without forming any "judgment as to the credibility of any witness" (JA 469 n. 2) – – that the facts established that the sentence alleged  to be fabricated in April Pride's statement was not the legal cause of Massey's conviction.  Rather, the District Court concluded that, in the light most favorable to Massey, while "[a]t best it [the alleged fabrication] weakened one of the two defenses" that Massey presented, in the face of Wood's admitted "positive" in-court identification based on Massey's appearance and his voice, and Savall's identification placing him at the crime scene (and thus not at work) at the time of the crime, the jury would not have rendered a different verdict "absent the fabrication." (JA 484) Moreover, at the point at which the "fabrication" occurred, it was not plausible that Officer Esposito was in any position to

- 28 -

anticipate that this could become evidence of a crime and thus could not have foreseeably led to Massey's conviction at trial nearly two years later:

> To so find would require Officer Esposito to have anticipated correctly that Pride would testify that Massey did not have braids, and that his fabricated statement would sufficiently rebut such testimony in the eyes of the jury. It would have required the foresight to recognize, long before trial, this single issue amidst the legion of potential issues, and to avert it by inserting such fabrication. It likewise would require Officer Esposito to have the foresight to predict the actions of numerous independent parties: how the defense would align its case; how witnesses would testify; how the prosecutor would seek to use such evidence at trial; and under what terms the judge would allow its admission.

(JA 484–85). The District Court further held that these identifications, combined with April Pride's own testimony that Massey was present at the apartment complex the morning of the crime (and thus could not have been at work), created probable cause as a matter of law. Since the facts and uncontradicted portions of the pleadings established both probable cause and that the alleged fabrication was not the cause of Massey's conviction, Massey's Complaint did not establish a plausible case for constitutional violations, for a conspiracy to commit those violations, or for any actionable violations of North Carolina law.

Massey now appeals.

## SUMMARY OF ARGUMENT

The central and overarching truth of this case is that Shawn Massey was unequivocally identified at his trial – – by both his face and his voice – – by Mrs. Wood as the man who attacked her.[13]  There is no allegation, hint of an allegation, or legitimate inference, that Mrs. Wood's identification – – or Teresa Savall's independent identification of Massey at the scene of the crime at about the time of the crime – – was in any way affected or influenced by Officer Esposito's alleged fabrication or by Officer Ojaniit's omission of the words "the most like" from his written report.  This eyewitness evidence was not only the evidence that caused Massey's conviction, but also plainly established probable cause to believe that he committed this crime.[14]  Moreover, the legitimacy of these identifications and their admissibility cannot be relitigated in this case, since the courts of North Carolina have already found them both constitutional and admissible.  Thus, the very premise of Massey's appeal to this Court – – that the identifications

---

[13]  Indeed, Mrs. Wood continues to this day to identify Massey as the man who attacked her, an issue on which Massey has failed a polygraph test.

[14] The Complaint's assertion that Shawn Massey is innocent does not mean that there was not probable cause to believe that he committed the crime, nor does it mean that the evidence was not sufficient to submit to a jury and to uphold a conviction.  Put simply, the existence of probable cause is neither inconsistent with actual innocence nor with the existence of reasonable doubt.

- 30 -

were wrong – – is barred from relitigation under the *Rooker-Feldman* doctrine.  Consequently, the District Court was correct in granting the Defendants' Motions and dismissing Massey's Complaint.

**ARGUMENT**

*Standard of Review*

This Court reviews the District Court's decision granting Judgment on the Pleadings *de novo*.  *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 364–65 (4th Cir. 2012).

To survive a motion for judgment on the pleadings, a plaintiff must allege "enough facts to state a claim to relief that is *plausible* on its face." *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570, 127 S.Ct. 1955, 1974 (2007) (emphasis in original).  The factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 127 S.Ct. at 1974.  In making this determination, the Court assumes the Complaint's well-pleaded facts are true and draws all reasonable inferences from pleadings in plaintiff's favor. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  The Court need not, however, accept as true those factual allegations "that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002).  Put simply, the Plaintiff has the

burden of pleading "more than a sheer possibility that a defendant acted unlawfully." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). While "hyper-technical" pleadings of prior eras are not required, the Plaintiff must make more than "naked assertions of wrongdoing" without any "factual enhancement." *Twombly,* 550 U.S. at 557, 127 S.Ct. at 1955.

*This Court May Evaluate the Allegations of the Complaint Against the Factual Matters Presented in the Exhibits Attached to the Answers in Determining the Sufficiency of the Complaint*

In the course of his Complaint, Massey referred to the Motion of the District Attorney that freed him (JA 9, ¶1), the Order of the Superior Court that set him free (JA 9, ¶1), Mrs. Wood's statement to police about her attack (JA 12, ¶¶15-16), Officer Esposito's report on is interview of April Pride (JA 12-13, ¶¶17-19), the photo array containing Massey's picture that was shown to Mrs. Wood (JA 13, ¶20), Officer Ojaniit's written report about Mrs. Wood's identification of Massey in the photo array (JA 13, ¶21), Officer Ledford's report on Ms. Savall's identification of Massey in a photo array (JA 13, ¶22), and the testimony at trial. (JA 14-15, ¶¶24-31). Massey attached none of these documents to his Complaint. The Defendants attached each to their Answers.

Massey sought to strike the exhibits as improper; his Motion was denied and was not renewed either before the District Court or in this appeal. Nonetheless, in his Brief Massey

- 32 -

claims it is inappropriate to consider the transcript of his trial since it was allegedly the result of "tainted" evidence and, because of this, the District Court failed to consider the exhibits in the light most favorable to him. In so arguing, Massey both misapprehends the purpose for which the documents were attached as exhibits, and the way in these exhibits are appropriately used in evaluating the sufficiency of the allegations of his Complaint.

Massey alleged an absence of probable cause from the time of his arrest through his conviction; he further alleged that the cause of his conviction was Officer Esposito's alleged fabrication. Probable cause requires only sufficient evidence to warrant the belief of a reasonable officer that an offense has been committed and that a particular person probably committed that offense. *See Brown v. Gilmore*, 278 F.3d 362, 367 (4th Cir. 2002). Whether probable cause exists is based on the totality of the circumstances known to the officer at the time. *Id.* The exhibits attached to the Answers contain the facts that were known from the time the crime was first reported through Massey's arrest, indictment and trial. Their legal significance does not lie in whether, today, the facts are correct or a witness in hindsight was right or wrong in an identification; their legal significance is that they represent the best and undisputed evidence of the facts that existed at the time – –

- 33 -

the facts against which the legal question of the existence of probable cause must be measured.

Similarly, to establish a constitutional violation of his Due Process right to a fair trial, Massey must allege facts that, if proven, would show that Officer Esposito's alleged fabrication was "the legally cognizable" cause of his conviction. *Zahrey v. Coffey*, 221 F.3d 342, 349–50 & n.5 (2nd Cir. 2000). As observed by one District Court:

> It is particularly critical to distinguish between an alleged fabrication that "precipitated the sequence of events that resulted in the deprivation of liberty" from other charges of fabrication of evidence. *Zahrey*, 221 F.3d at 350 n.5. As vile as any fabrication of evidence is, particularly when the offender is a law enforcement officer, it seems obvious that a defendant who achieves a favorable determination in a criminal case cannot properly be permitted to seek damages (and obtain a jury trial) simply by asserting, for example, that one of several (equally incriminating) alleged admissions in a post-arrest statement was not in fact made.

*Richardson v. The City of New York*, 2006 WL 2792768 fn.4 (E.D.N.Y. 2006). The best (and only) evidence of the proof that led to Massey's conviction is the trial transcript; it is the only source from which the issue of what caused Massey's conviction can be addressed. In the face of an allegation that Officer Esposito's alleged fabrication was the cause of Massey's conviction, it is entirely appropriate for a court to consider all of the other evidence arrayed against Massey at his trial to determine whether this allegation is more than speculation.

- 34 -

Moreover, this evidence will not change with discovery or prior to summary judgment or trial; depositions taken in 2013 or 2014 cannot alter or change the evidence presented in 1999 and it is that evidence that determines causation in this case.[15]

Courts routinely weigh the allegations of a Complaint against the documentary sources of those allegations in determining whether a Complaint states a claim. Thus, in cases involving claims of securities fraud or misleading statements, federal courts typically look to the prospectus or statements for both the words of the statements and the context in which the statements took place to evaluate the sufficiency of a Complaint. *See, e.g., Katyle v. Penn National Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011 ) (citing cases). *See Tellabs, Inc. v. Makor Issues & Rights*, 551 U.S. 308, 322, 127 S.Ct. 2499 (2007).

Massey nonetheless argues that, since these documents must be evaluated in the light most favorable to him, evidence in these documents that does not support his claim or which

---

[15] In opposition to any consideration of the transcript of his trial, Massey cites this Court's refusal to consider the transcript of a public hearing in *Clatterbuck v. City of Charlottesville,* 708 F.3d 549 (4th Cir. 2013). These cases could not be more different. *Clatterbuck* involved the transcript of a citizen's comments on panhandling legislation which the District Court used to create the legislative purpose (the legislation itself contained no purpose clause). Here, of course, the trial transcript is the official record of the sworn testimony presented at Massey's trial – – one that the courts routinely rely on in judging events at trial.

contradicts his allegations must be disregarded. This is simply incorrect. Where Massey makes an allegation about what someone said, and that allegation is contradicted by a transcript of what was actually said, a court is not controlled by the allegation. *Blankenship v. Manchin*, 471 F.3d 523, 529 (4th Cir. 2006) ("We must accept the allegations in the complaint . . . unless they . . . contradict matters properly subject to judicial notice or by exhibit."); *Veney*, 293 F.3d at 730 ("Nor must we accept as true allegations that contradict matters properly subject to judicial notice or by exhibit."); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997). Similarly, if Massey alleges that one fact led to his conviction, it is appropriate for a court to consider the transcript setting forth all of the facts in determining whether his allegation is plausible.

The District Court explicitly stated that it considered the exhibits, including the trial transcript, as factual matters only, forming no judgments on the credibility of any particular witness. (JA 469 n.2) It also made clear that it reviewed the evidence in the light most favorable to Massey. This is borne out by the District Court's repeated references to Massey's claim of fabrication as a fact, one which the District Court assumed to be true despite an equivocal trial record. April Pride never claimed that Officer Esposito lied or fabricated

anything; her testimony was only that she did not "recall telling" Officer Esposito that Massey wore braids.[16] Objectively, her testimony was nothing more than a witness disagreeing with what a law enforcement officer wrote in an unsigned statement – – something which occurs daily in trials throughout the country. However, for purposes of this case the allegation of deliberate fabrication was assumed to be true.

Thus this Court is free to test the plausibility of the Complaint against the actual facts of the case as revealed by the original documents and trial transcript. When so tested, it is clear both that probable cause otherwise existed and that the alleged fabrication was not the legal cause of Massey's conviction.

I.   **THIS COURT HAS NO JURISDICTION TO CONSIDER THE PLAINTIFF'S APPEAL AS TO OFFICER LEDFORD AS A CONSEQUENCE OF THE PLAINTIFF'S FAILURE TO OBJECT TO THE RECOMMENDATION OF THE MAGISTRATE-JUDGE.**

Officer Ledford filed a Motion for Judgment on the Pleadings under Fed.R.Civ.P. Rule 12(c) on November 28, 2011. This case was assigned to a Magistrate-Judge. On August 17, 2013, the Magistrate-Judge recommended that Officer Ledford's Motion be granted (JA 463) on the ground that the Complaint's allegations against him "simply do not support a finding that

_____

[16] There were a number of other matters that appeared to have occurred which April Pride did not recall, including whether she told the Assistant District Attorney that Massey wore braids or whether she was shown any pictures by him. (JA 194–195).

Ledford violated Plaintiff's constitutional rights or committed any other wrongdoing." (JA 462).    Indeed, according to the Magistrate-Judge, the allegations did not "even suggest that Ledford was more than minimally involved in any aspect of the case." (JA 462).    As is standard in the Western District of North Carolina, the Magistrate-Judge's Order contained a specific section on the "TIME FOR OBJECTIONS," notifying Massey's counsel that objections to the Order were to be filed within fourteen days and that a failure to file objections, would preclude a party "from raising . . . objections on appeal." (JA 463-64).    The Federal Rules of Civil Procedure require as much.    Fed.R.Civ.P. Rule 72(b)(2).

The Plaintiff failed to file any objections to the Magistrate-Judge's Order recommending dismissal of the Complaint as to Officer Ledford.    The failure to object to a Magistrate-Judge's report bars a party from appealing the judgment of the District Court implementing the recommendation.    *U.S. v. Schronce,* 727 F.2d 91, 93-94 (4th Cir. 1984); *Wells v. Shriners Hospital,* 109 F.3d 198, 201 (4th Cir. 1997); 28 U.S.C. §636(b). *See U.S. v. Midgette*, 478 F.3d 616, 621 (4th Cir. 2007) (citing *Schronce* and holding that the failure to file specific objections to Magistrate-Judge recommendation waives the right of appeal).

- 38 -

Consequently, Massey has no right to appeal the dismissal of his Complaint against Officer Ledford as he has waived his right to do so by failing to file objections.  As such, this Court is without jurisdiction to hear his appeal as to Officer Ledford under 28 U.S.C. §1291.

II.   **THE UNCONTRADICTED PORTIONS OF THE PLEADINGS AND EXHIBITS ESTABLISH THAT PROBABLE CAUSE EXISTED INDEPENDENT OF THE EVIDENCE THAT THE PLAINTIFF CLAIMS IS TAINTED (COUNTS II, III AND V).**

Three of the Plaintiff's five claims are explicitly based on, and require as one of their premises, a lack of probable cause.  *See* (JA 18, ¶44 [Count II]).  ("Defendants knew, or reasonably should have known, that there was no probable cause for this prosecution of Mr. Massey"); (JA 19, ¶50 [Count III]).  ("Under color of state law, Defendants conspired . . . by charging and prosecuting him on charges of armed robbery, and kidnapping, which these Defendants knew were not supported by probable cause."); (JA 20, ¶59 [Count V]).  ("Beginning on or around May 23, 1998, the Defendants . . . instituted or participated in the institution of criminal proceedings against Shawn Massey.  These proceedings were not supported by probable cause . . . .").  Counts II[17] and III proceed under Section 1983

---

[17] While Count II purports to raise a "malicious prosecution" claim under Section 1983, this Court has explicitly held hat "there is no such thing as a '§1983 malicious prosecution' claim." *Lambert v. Williams*, 223 F.3d 257, 262 (4th Cir. 2000). Rather, such a claim is "simply a claim founded on a Fourth

- 39 -

based upon a violation of the Fourth Amendment; Count V is a pendent state law claim for malicious prosecution.

There is no question that the "Fourth Amendment prohibits law enforcement officers from making unreasonable seizures and a seizure of an individual effected without probable cause." *Brooks v. City of Winston-Salem*, 85 F.3d 178, 183 (4th Cir. 1996). When probable cause exists, however, there is no constitutional violation. *S.P. v. City of Takoma Park, Md.,* 134 F.3d 260, 274 (4th Cir. 1998). Where a Plaintiff alleges that an arrest warrant (or indictment) was procured through false or dishonest testimony, "in order to violate the Constitution, the false statements or omissions must be 'material,' that is, 'necessary to the [neutral and detached magistrate's] finding of probable cause.'" *Miller v. Prince George's County*, 475 F.3d 621, 628 (4th Cir. 2007) (*quoting Franks v. Delaware*, 438 U.S. 154, 155-56, 98 S.Ct. 2674 (1978). To determine "materiality," in turn, the "court must 'excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the "corrected" warrant affidavit would establish probable cause.'" *Miller*, 475 F.3d at 628 (*quoting Wilson v. Russo,* 212 F.3d 781, 789 (3rd Cir. 2000). "If the 'corrected'

---

Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution. . . ."

- 40 -

warrant affidavit establishes probable cause," then "no civil liability lies against the officer." *Id.*

Put differently, a false or misleading statement in a warrant affidavit does not automatically constitute a Fourth Amendment violation. *Wilkes v. Young,* 28 F.3d 1362, 1365 (4th Cir. 1994). Rather, the false statement must be so material that, without it, no probable cause would have existed to issue the arrest warrant or seek the indictment. *See Wilkes*, 28 F.3d at 1365 ("Here, probable cause for Wilkes' arrest plainly existed *even in the absence of Young's purported misrepresentation*; thus, even accepting Young's statement as a lie, it could not possibly have constituted a Fourth Amendment violation because the material falsely represented was altogether unnecessary to the magistrate's finding of probable cause.") (reversing jury verdict for the Plaintiff) (emphasis in original). *See, e.g., Evans v. Chalmers*, 703 F.3d 636, 650 (4th Cir. 2013). A similar analysis exists for a claim under North Carolina law for malicious prosecution; that is, the Plaintiff must show an absence of probable cause before he may state a claim. *Best v. Duke University*, 337 N.C. 742, 749, 448 S.E.2d 506, 510 (1994).

It is axiomatic that "probable cause" only requires "enough evidence 'to warrant a man of reasonable caution in the belief that an offense has been or is being committed.'" *Wilkes*, 28

- 41 -

F.3d at 1365. *See State v. Crawford,* 125 N.C. App. 279, 282, 480 S.E.2d 422, 424 (1997) ("the degree of certainty necessary for probable cause is . . . less than 'preponderance of the evidence.'"). "Probable cause" is a "commonsense, nontechnical" concept that deals "with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Ornelas v. United States,* 517 U.S. 690, 695, 116 S.Ct. 1657, (1996). This Court has held that probable cause does not require that the officer's belief be more likely true than false, rather it is an assessment only of the probabilities. *U.S. v. Humphries*, 372 F.3d 653, 660 (4th Cir. 2004). *See Illinois v. Gates,* 462 U.S. 213, 235 (1983) ("[O]nly the probability, not a prima facie showing, of criminal activity is the standard of probable cause.").

The Complaint sets forth two "tainted" pieces of evidence: (1) Officer Ojaniit's typewritten statement of Mrs. Wood's identification and (2) Officer Esposito's alleged fabrication. With respect to Officer Ojaniit's statement, the key allegation in each of Massey's claims is that Officer Ojaniit utilized the phrase "looks like" as opposed to "looks most like" and this resulted in Massey's arrest and his prosecution without probable cause. The undisputed evidence shows that Officer Ojaniit made precisely this notation on the photo array: "said this looks most like him except no braids." (JA 76). Officer Esposito's

fabrication is said to have caused Massey's arrest without probable cause because it led Officer Esposito to provide Massey's mug shot to Officer Ojaniit, who then provided it to the Robbery Division, which then put together a constitutionally valid photo array, and, based on this array, Ms. Savall and Mrs. Wood identified Massey. Ultimately, however, the crux of the Plaintiff's claims is his argument that Mrs. Wood was incorrect in her identifications of Massey.

The facts as revealed in the Complaint and the exhibits show plainly that, without the allegedly fabricated sentence and with the addition of the words that were already on the photo array into the written report, there was an abundance of probable cause in this matter. Mrs. Woods identified Massey as her attacker; two independent witnesses placed him in the Emerald Bay Apartments on the morning of the crime, and one placed him there at about the time of the crime. The attacker was both familiar with the Emerald Bay Apartments and had been there often enough to be able to observe Mrs. Wood and her husband to the point that he was familiar with their schedules, a familiarity that Massey had as established by April Pride. Moreover, both April Pride's testimony and Ms. Savall's identification – – which the Plaintiff pointedly does not attack – – substantially undermined Massey's alibi. Because Shawn Massey did not own a car, April Pride's testimony that he was at

her apartment on the morning of the crime as late as 6:45am made it impossible for him to be at his grandmother's home more than 5 miles away to be picked up between 6:45am and 7:00am.   Ms. Savall's identification of Massey at the apartments around the time of the crime made Massey's alibi defense impossible.

Based on Mrs. Wood's identification alone, there was probable cause to arrest and seek the indictment of Shawn Massey for these crimes: "[I]t is well-established that '[w]hen an officer has received. . . information from some person—normally the putative victim or an eye witness—who it seems reasonable to believe is telling the truth, he has probable cause.'" *Spiegel v. Cortese*, 196 F.3d 717, 724 (7th Cir. 1999).   Indeed, this Court has recognized that "[i]t is surely reasonable for a police officer to base his belief in probable cause on a victim's reliable identification of his attacker," as "it is difficult to imagine how a police officer could obtain better evidence of probable cause than an identification by name of assailants provided by a victim, unless, perchance, the officer were to witness the crime himself." *Torchinsky v. Siwinski*, 942 F.2d 257, 262 (4th Cir. 1991).   Accordingly, "[a]n eyewitness identification will constitute sufficient probable cause 'unless, at the time of the arrest, there is an apparent reason for the officer to believe that the eyewitness was lying, did not accurately describe what he had seen, or was in some fashion

- 44 -

mistaken regarding his recollection of the confrontation.'" *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999).

These undisputed facts amount to substantial evidence from which a neutral and detached third-party – – be it a magistrate or a grand jury – – could conclude that there was probable cause that Shawn Massey committed these crimes. The Plaintiff, however, claims this conclusion is incorrect because Mrs. Wood's identification was wrong and because the Officers failed to inquire further on various matters (thereby both eliminating probable cause and proving the existence of a conspiracy). Neither argument is correct.

Massey directly challenges on this appeal the reliability and sufficiency of Mrs. Wood's identification of him, claiming that because she must have mistakenly identified him that this is evidence of bad faith on the part of the Officers.[18]  This he cannot do in this litigation.  The sufficiency and reliability of Mrs. Wood's identification under both North Carolina law and the U.S. Constitution was challenged in the North Carolina courts and found  sufficiently valid to be submitted to a Jury. Under the *Rooker-Feldman* doctrine, the Plaintiff is barred "from seeking what in substance would be appellate review of the state

---

[18]  Significantly, Massey does not challenge the reliability of Ms. Savall's identification of him; her identification made his alibi defense to these crimes impossible and placed him in the area of this crime at about the time of the crime.

- 45 -

judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005-06, 114 S. Ct. 2647 (1994). *See Washington v. Wilmore*, 407 F.3d 274, 279 (4th Cir. 2005). The *Rooker-Feldman* doctrine bars "lower federal courts from considering not only issues raised and decided in the state courts, but also issues that are 'inextricably intertwined with the issues that were before the state court." *Washington* 407 F.3d at 279.[19]   In this case it plainly bars any re-examination of the legality, admissibility, or legal reliability of Mrs. Wood's identification.  As such, the Plaintiff cannot attack the existence or the sufficiency of that identification.  Similarly, the Plaintiff cannot challenge that the evidence set forth in the Court of Appeals opinion was legally sufficient to submit this criminal case to the jury. That opinion found that, based on Mrs. Wood's identification and the circumstances surrounding her attack that made that identification possible (and without reference to the alleged

---

[19]   Alternatively, "collateral estoppel applies when §1983 plaintiffs attempt to re-litigate in federal court issues decided against them in state criminal proceedings." *Allen v. McCurry*, 449 U.S. 90, 102, 101 S.Ct. 411 (1980) (Plaintiff could not revisit motion to suppress in §1983 claim denied in state court under guise of Fourth Amendment violation in federal court).  *See Gray v. Farley*, 13 F.3d 142, 146-47 (4th Cir. 1993) (plaintiff collaterally estopped from bringing §1983 claim against jailers based on state criminal court denial of motion to suppress confession elicited by alleged beating).

fabrication in April Pride's statement), the evidence was sufficient to be submitted to the Jury, a standard that exceeds a probable cause determination.

Massey also claims that Officers Ojaniit and Ledford failed to follow various leads which, had they done so, would have revealed that Massey did not commit the crime. For example, Massey's Brief criticizes Officer Ledford for not arranging for Mrs. Wood to see Massey in person after she told him that "she believed the person she identified was the person who robbed her. That she would be certain if she saw him in person." There are several difficulties with this argument. First, this allegation against Officer Ledford appears nowhere in the Complaint, nor can any legitimate inference from the allegations that are in the Complaint be used to create this claim. Indeed, Massey's Brief fails to refer to the Complaint at all in making this argument. Second, Massey fails to note that, at the time that Officer Ledford heard this from Mrs. Wood, Massey was nowhere to be found – – the warrants were issued in June but were not served until late August when Massey was arrested on unrelated charges. Put simply, there was no way that Mrs. Wood could have been shown Massey "in person" before his arrest in August (nor is there any allegation that this could have happened). Finally, and most importantly, the failure to pursue potentially exculpatory evidence (assuming this evidence was

- 47 -

exculpatory) does not negate probable cause, *Wadkins v. Arnold*, 214 F.3d 535, 541 (4th Cir. 2000), for the law does not require a reasonable officer to "exhaust every potentially exculpatory lead or resolve every doubt about a suspect's guilt before probable cause is established." *Torchinsky v. Siwinski,* 942 F.2d 257, 264 (4th Cir. 1991). *See Krause v. Bennett*, 887 F.2d 362, 371 (2d Cir. 1989) ("[P]robable cause does not require an officer to be certain that subsequent prosecution of the arrestee will be successful.").

Similarly, Massey criticizes Officer Ojaniit for not asking further questions about the hairstyle of the attacker during Mrs. Wood's photo identification of Massey, claiming that the attacker's "distinctive" cornrow hairstyle would have been revealed. As noted above, however, the difficulty with this argument is that Mrs. Wood never testified that Massey had a "distinctive cornrow" hairstyle – – indeed, she never used the term "cornrow" at all.

Finally, Officer Esposito, Officer Ojaniit and Officer Ledford did not testify before the Grand Jury. A necessary element of both an unreasonable arrest under the Fourth Amendment, and of malicious prosecution under North Carolina tort law, is that the defendant must have "initiated the proceeding" – – either by securing the arrest warrant, making the arrest without a warrant or providing testimony to the Grand

- 48 -

Jury to secure an indictment. *Best v. Duke University*, 337 N.C. at 749; *Strickland v. Hedrick*, 194 N.C. App. 1, 22, 669 S.E.2d 61, 74 (2008).[20]  This intervening decision, precipitated by a prosecutor and arrived at by the Grand Jury based on the testimony of persons other than the Defendants, can by itself break the causal link needed in a constitutional tort claim under the Fourth Amendment absent evidence that the officer "misled or pressured the prosecution." *Evans,* 703 F.3d 636, 648 (2013).  Here the evidence is clear that Mrs. Wood's statement that the photo of Massey looked "the most like" her attacker was provided to the prosecutor (who in turn produced it in discovery) and was the subject of cross-examination at trial — — thus, the prosecutor could not have been "misled" about her identification.  In addition, what April Pride did not say about Massey's hair was irrelevant to the State's case — — as evidenced by the fact that the prosecutor never questioned her about Massey's hair.  Rather, the State's case rested on Mrs. Wood's and Ms. Savall's identifications of Massey, identifications that were independent of any statement made (or not made) by April Pride.

---

[20] While Officer Ledford received the arrest warrants for Massey, these were not served until Massey was in custody on other charges — — thus, Massey was already being held regardless of the warrants in this case (which were superseded less than two weeks later by the Grand Jury's indictment).

- 49 -

Consequently, the factual record based upon the exhibits and uncontradicted portions of the pleadings, and assuming the truth of Massey's allegations about Officer Ojaniit's report and Officer Esposito's alleged fabrication, reveals that probable cause against Massey existed independent of these issues.  Since probable cause existed, the Plaintiff cannot establish that the Defendants violated his constitutional right to be free from unreasonable seizure and his claims in Counts II and III must be dismissed.  Similarly, the existence of probable cause means that the Complaint fails to state a claim for malicious prosecution under North Carolina law under Count V.

### III. THE ALLEGED FABRICATION WAS NOT THE CAUSE OF MASSEY'S CONVICTION (COUNT I).

In Count I of the Complaint, the Plaintiff alleges a constitutional violation under the Fifth and Fourteenth Amendments, and specifically the Due Process Clause, premised on the allegation that his conviction was obtained as a result of Officer Esposito's alleged fabrication.  (JA 17, ¶¶37, 39, 41).[21] While Count I is framed against all "Defendants," the only act alleged to have violated Massey's Due Process right to a fair trial was the alleged fabrication of evidence by Officer

---

[21] Since the Complaint alleges that Officer Esposito was a state law enforcement officer, there is no claim under the Fifth Amendment against him; the Plaintiff must proceed solely under the Fourteenth Amendment.  *See Winfield v. Bass*, 106 F.3d 525, 530 n.2 (4th Cir. 1997) (due process claim does not lie against state officials under Fifth Amendment).

- 50 -

Esposito. (JA 17, ¶¶37–39).    Consequently, the allegations of

this Count – – and thus of the claimed Due Process violation – –

appear to apply only against Officer Esposito.

The fabrication of evidence, by itself, does not create a

constitutional claim and, in fact, does not violate the

Constitution. *See Zahrey v. Coffey*, 221 F.3d 342, 348 (2nd Cir.

2000) ("The manufacture of false evidence, 'in and of itself,'

. . . does not impair anyone's liberty, and therefore does not

impair anyone's constitutional rights.").[22]    Rather, a claim

under the Due Process Clause is based on "the right not to be

deprived of liberty as a result of the fabrication of evidence

by a government officer acting in an investigative capacity."

221 F.3d at 349.    *See Washington v. Wilmore*, 407 F.3d 274, 282

(4th Cir. 2005) (*relying on and quoting Zahrey*).    Thus, part and

parcel of the Due Process right to a fair trial is the legal

requirement that the fabricated evidence must have caused the

conviction.    As expressed by the Court in *Zahrey*, this is simply

a classic "but for" inquiry:

> The initial wrongdoer might avoid liability where
> the intervening decision-maker would have precipitated

_____

[22] *See, e.g., Buckley v. Fitzsimmons*, 20 F.3d 789, 795 (7th Cir.
1994) ("Let us suppose the prosecutors put Cruz on the rack,
tortured him until he named Buckley as his confederate, and then
put the transcript in a drawer, or framed it and hung it on the
wall but took no other step, or began a prosecution that did not
introduce the statement.    Could Buckley collect damages under
the Constitution?    Surely not; Cruz himself would be the only
victim.").

- 51 -

> the deprivation of liberty, even in the absence of the
> antecedent misconduct; in that circumstance, "but for"
> causation could be claimed to be lacking.

221 F.3d at 352 n.8. In short, the Plaintiff must show that the
fabrication was the legal cause of his conviction such that, in
its absence, the evidence would have been insufficient to
convict him.

Courts have consistently recognized that an alleged
fabrication must be both "material" – – that is "likely to
influence a jury's decision," *Ricciuti v. New York Transit
Authority*, 124 F.3d 123, 130 (2nd Cir. 1996) – – and "the legally
cognizable" cause of the conviction, *Zahrey*, 221 F.3d at 349–50
& n.5. The policy behind such a requirement is straightforward
and reflects the precise situation in this case: "The
availability of a cause of action based solely on a claim of
fabrication, without the materiality and causation requirements,
would unduly deter prosecutors' exercise of discretion to
dismiss or abandon cases for a broad array of reasons having
nothing to do with the defendant's guilt or the claimed
fabrication." *Richardson v. The City of New York*, 2006 WL
2792768 fn.4 (E.D.N.Y. 2006)*. See Hovatter v. Widdowson*, 2006
WL 890713 (D. Md. 2006) ("the right enunciated in these cases
[*Zahrey* and *Wilmore*] would not be violated, even where an
investigative officer fabricates evidence, if that fabrication
was not the 'cause' of the plaintiff's detention and

- 52 -

conviction.") (granting summary judgment for the Defendant despite the existence of numerous statements that "at the very least, . . . are contradicted by other evidence in the record."). This requirement of actual causation (rather than mere "foreseeability") was recently reaffirmed by this Court in *Evans*, were, in dismissing many of the Plaintiffs' constitutional claims, this Court noted that all "constitutional torts, like their common law brethren, require a demonstration of both but-for and proximate causation." *Evans*, 703 F.3d at 647 and n. 5.

The question then, is whether the Complaint, in light of the undisputed facts, demonstrates as a legal matter that absent the allegedly fabricated information in Officer Esposito's notes, Shawn Massey would not have been convicted of these crimes. The answer to that question is "no." At trial, Mrs. Wood testified at length about her opportunity to identify her attacker, testified about her identification of Shawn Massey from among numerous photo arrays, and identified him in the courtroom as the person that assaulted and robbed her on the morning of May 23, 1998 at the Emerald Bay Apartments. Mrs. Wood identified Shawn Massey not merely by his appearance, but also by his voice, having heard him speak during the preliminary proceedings. Theresa Savall testified at length about her identification of Shawn Massey as the man who propositioned her

- 53 -

at the Emerald Bay Apartments at about the time of these crimes,
an identification that firmly placed Shawn Massey in the complex
that morning.   The portion of April Pride's statement that is
not in dispute also placed Shawn Massey in the Emerald Bay
Apartments that morning.   Both Theresa Savall and April Pride's
testimony directly contradicted and undermined Shawn Massey's
alibi defense – – pointedly, if both are believed, then Shawn
Massey was not at work on the morning of May 22 nor could he
have been (let alone picked up at his grandmother's house more
than 5 miles away at between 6:45am and 7:00am).   April Pride's
testimony further established that Shawn Massey had the same
intimate knowledge of the Emerald Bay Apartments exhibited by
the attacker, since she said Massey "frequently" stayed at her
apartment and was "like family."   This evidence, without mention
of any impeachment of April Pride, was found to be sufficient by
the Court of Appeals to uphold Shawn Massey's conviction on
appeal, a determination that cannot be revisited in this federal
civil action under the *Rooker–Feldman* doctrine.

As a matter of law, it is simply not "plausible" that the
allegedly fabricated information about whether April Pride said
that Massey wore braids was the evidence that convicted Shawn
Massey and was so pivotal that in its absence Massey would have
been acquitted.

- 54 -

Moreover, the transcript unequivocally reveals that this evidence was not admitted for substantive purposes, but solely for purposes of corroboration with this instruction: "Members of the jury, you may consider this account from Officer Esposito as to what was said to him by April Pride, for the purpose of corroborating the testimony of April Thompson [Pride], if indeed you find that it does corroborate her testimony. Do not consider it for other purposes." (JA 205–06). As noted by the District Court, it is axiomatic that "[w]here the jury is given a limiting instruction, any concern that the jury will improperly use the evidence subsides." *U.S. v. Branch*, 537 F.3d 328, 342 (4th Cir. 2008). Consequently, Officer Esposito's alleged fabrication, and his testimony concerning it, could not have been used as substantive evidence to convict Massey, or even to determine the question of whether he wore braids in his hair.

This conclusion is made more compelling when the limited use of this information is considered in the context of the evidence presented by Shawn Massey in his defense about the length of his hair. Numerous witnesses testified to the same thing that April Pride claimed at trial – – that Shawn Massey never wore braids in his hair and did not have braids at the time of the crimes. In short, even if it is assumed that this impeachment undermined April Pride's credibility (in

contravention of the limiting instruction), there was other substantial evidence about Shawn Massey and his hair style, including pictures of that style (not the least of which was the mug shot itself, a mug shot that did not show him with braids or with hair sufficiently long to be braided), evidence that was heard and rejected by a jury.

The Plaintiff's claim in this case – – indulging in the assumption that it is true – – is the same as the "asserti[on], for example, that one of several (equally incriminating) alleged admissions in a post-arrest statement was not in fact made." *Richardson*, 2006 WL 2792768 fn.4. Neither are sufficiently material to be the "but for" or proximate causes of his conviction.

## IV. THE PLAINTIFF'S CLAIMS FOR CONSPIRACY MUST BE DISMISSED (COUNTS III, IV, and V).

The Complaint in this case simply alleges a conspiracy between the Defendants; it offers neither facts to support that allegation nor any reason why this could be a legitimate inference. Indeed, the Complaint is silent as to why these Officers, none of whom are alleged to have had any dealings with or even to have known Massey before this incident, would have selected Massey shortly after the crime and targeted him in a conspiracy to wrongfully convict him. Moreover, the Complaint utterly fails to establish that the acts of each of the Officers

- 56 -

were anything other than unilateral.  It is difficult to understand how Officer Esposito's alleged fabrication on the day after the crime made Officer Ledford's actions in showing Ms. Savall an array with Massey's photograph an act in furtherance of any conspiracy or establishes that there was a conspiracy at all, particularly since the Plaintiff does not contest that Ms. Savall accurately identified him from that array. Similarly, it is not clear how Officer Ojaniit's actions in accurately writing down what Mrs. Wood said during her identification of Massey (for later production to Massey's counsel) meant that his written report was evidence of a criminal conspiracy to violate Massey's civil rights.  Moreover, the Complaint is utterly silent as to what, if anything, Officer Ledford did other than receive the warrants and conduct the concededly accurate identification of Massey by Ms. Savall.  Since there is nothing in the Complaint that "reasonably lead[s] to the inference that [the Defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan," *Ruttenberg v. Jones*, 283 F.App'x 121, 132 (4th Cir. 2008), the allegation of conspiracy, on its face, is not plausible or sufficient under *Twombley*.  *See Ruttenberg*, 283 F.App'x at 132 ("[T]he bare, conclusory allegation that the defendants conspired to violate [the Plaintiff's] constitutional rights and that the conspiracy culminated in fabricated testimony" is not

- 57 -

insufficient to state a claim).  Moreover, the stated object of the conspiracy – – to charge and prosecute Massey in a case that was not supported by probable cause (JA 19, ¶50) – – cannot exist if probable cause exists.  That is, if probable cause exists as a matter of law, even if it is assumed that there was an agreement among the Defendants to prosecute Massey, the existence of probable cause means that this agreement is neither illegal nor a violation of Massey's constitutional rights.

**V.    NORTH CAROLINA DOES NOT RECOGNIZE A CIVIL CAUSE OF ACTION AGAINST A LAW ENFORCEMENT OFFICIAL FOR OBSTRUCTION OF JUSTICE (Count IV).**

Massey correctly observes that, under North Carolina law, obstruction of justice is a common–law felony.  *See, e.g., State v. Wright*, 206 N.C. App. 239, 696 S.E.2d 832 (2010).  He argues that since the Courts of North Carolina adopted a "broad" view of obstruction of justice in *Wright* in 2010, then this Court's decision in *Evans* that North Carolina would not realistically recognize a civil cause of action for obstruction of justice against police officers is wrong.  Brief at 43.  In *Evans*, decided less than one year ago, this Court specifically held that "in forecasting whether North Carolina would recognize such an action . . . . we must conclude that although such a holding may be a remote 'possibility,' it is not reality."  703 F.3d at 658.  *Wright* does not change this (nor could it as *Wright* preceded the decision in *Evans*).

- 58 -

In *Wright* a former state legislator was convicted of obstruction of justice for submitting false finance reports indicating that he had received charitable donations for a nonprofit group that he operated – – in fact, he had used that money for his own purposes.  The former legislator defended himself with the argument that, since there was no investigation being conducted at the time he submitted the reports, there could be no obstruction of justice.  The Court of Appeals disagreed, affirming his conviction on the commonsense theory that deliberately submitting a misleading document  to a regulatory agency with the intent to mislead it constitutes the common law crime of obstruction of justice regardless of whether an investigation was ongoing.  In light of these facts, it is difficult to see how the Plaintiff can leap from this case concerning the necessary elements for criminal liability to the conclusion that North Carolina would permit a new civil cause of action for obstruction of justice against police officers.  Consequently, while this panel is bound by the decision of the panel in *Evans*, that decision is also substantively correct.

## **CONCLUSION**

Shawn Massey was tried and convicted for attacking Mrs. Wood and her children at a trial in which the State's case was based on two eyewitness identifications of him, identifications which not only implicated him in the crime but made his

proffered alibi defense impossible.  Later discovered evidence concerning his hair style, along with a failure to provide potentially exculpatory (or at least impeaching) evidence to the defense, prompted the District Attorney, "out of an abundance of caution" and despite the existence of "substantial evidence" against Massey, to agree to set him free.  This decision arose out of a concern that it was no longer certain that a Jury would convict Massey in light of this additional evidence.  These events represent an appropriate exercise of discretion by a prosecutor acting in the interests of justice; they do not represent a conspiracy to violate Massey's civil rights nor do they represent inappropriate actions by any of the Officers in this case.  For the reasons set forth above, Massey's Complaint alleging this to be so was properly be dismissed.

Respectfully submitted this the 25th day of July, 2013.

/s/ James P. Cooney III
James P. Cooney III(L)
Womble Carlyle Sandridge & Rice, LLP
One Wells Fargo Center, Suite 3500
301 South College Street
Charlotte, North Carolina 28202-6037
Telephone:  704-331-4980
jcooney@wcsr.com
Attorney for Officer Gerald Esposito

Lori R. Keeton
Parker Poe Adams & Bernstein
Three Wells Fargo Center
401 South Tryon Street, Suite 3000
Charlotte, North Carolina 28202
lorikeeton@parkerpoe.com
Attorney for Officer J.J. Ojaniit

- 60 -

Daniel E. Peterson
Assistant City Attorney
Office of the City Attorney
600 E. Fourth Street
Charlotte, North Carolina 28202-2841
dpeterson@charlottenc.gov
Attorney for Officer Tom Ledford

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. **13-1460** Caption: **Shawn Massey v. J.J. Ojaniit, Gerald Esposito, Tom G. Ledford et al.**

### CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

**1. Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

> [X]    this brief contains __13,782__ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

> [ ]    this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

**2. Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

> [ ]    this brief has been prepared in a proportionally spaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*]; **or**

> [X]    this brief has been prepared in a monospaced typeface using __Windows 7, Word 2010__ [*identify word processing program*] in __12-pt Courier New__ [*identify font size and type style*].

(s) _/s/ James P. Cooney III_

Attorney for __Gerald Esposito__

Dated __July 25, 2013__

## CERTIFICATE OF SERVICE

I certify that on July 25, 2013, the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

James E. Coleman, Jr.
Duke University School of Law
210 Science Drive
Box 90360
Durham, North Carolina  27708
*Attorney for Plaintiff-Appellant Shawn Massey*


/s/ James P. Cooney III
Womble Carlyle Sandridge & Rice, LLP
One Wells Fargo Center, Suite 3500
301 South College Street
Charlotte, North Carolina 28202-6037
Telephone:  704-331-4980
jcooney@wcsr.com
Attorney for Officer Gerald Esposito